UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Troy Mann,

                Plaintiff,                      **MEMORANDUM OPINION AND ORDER**

       v.                                     Civil No. 08-5202 ADM/RLE

Darrin Shevich, individually and
in his official capacity; Pat Medure,
Itasca County Sheriff, individually
and in his official capacity; and the
County of Itasca,

                Defendants.

_____

Brendan R. Tupa, Esq., and Ross M. Hussey, Esq., Tupa & Hussey Law Offices, Minneapolis, MN, on behalf of the Plaintiffs.

William J. Everett, Esq., and Daniel P. Kurtz, Esq., Everett & VanderWiel, PLLP, Buffalo, MN, on behalf of Defendants.

_____

## I. INTRODUCTION

On December 11, 2009, the undersigned United States District Judge heard oral argument on Defendants Darrin Shevich ("Deputy Shevich"), Pat Medure ("Sheriff Medure"), and the County of Itasca's ("Itasca County") (collectively "Defendants") Motion for Summary Judgment [Docket No. 19]. In his Complaint [Docket No. 1], Plaintiff Troy Mann ("Mann") alleges violations of his constitutional rights under 42 U.S.C. § 1983, as well as state law claims of assault and battery, false imprisonment, negligence, and intentional infliction of emotional distress. In addition, Mann seeks punitive damages on his § 1983 claim against Shevich. For the reasons set forth below, Defendants' Motion is granted in part and denied in part.

## II. BACKGROUND[1]

On July 17, 2008, Tim Patterson ("Patterson") and his girlfriend, Vickie Broking ("Broking"), drove to Mann's excavating company in Deer River, Minnesota, to discuss trading a truck for Mann's car. Everett Aff. [Docket No. 23], Ex. A (T. Mann Dep.) 15:3-5, 53:20-54:16; Everett Aff., Ex. B (Broking Dep.) 9:1-9. To determine whether the truck met his needs, Mann test drove the truck around his property. Tupa Aff. [Docket No. 28] ¶ 2; Ex. L [Docket No. 29] (Mann Dep.) 57:3-58:4. Mann's eight-year-old son, Nicholas, rode along on the test drive. Id. 58:24-59:2. Nicholas was not wearing a seat belt. Everett Aff., Ex. E (N. Mann Dep.) 21:6-7.

Deputy Shevich, in his squad car on a highway near Mann's property, watched as Mann drove the truck along a railroad right-of-way and then across a field on Mann's property at a "very high rate of speed." Tupa Aff. ¶ 2, Ex. O [Docket No. 28] (Shevich Dep.) 30:15-34:24. After Deputy Shevich saw the truck go airborne as it went over a small hill in the field, he turned his squad car around and drove up behind the truck as it came to a stop in Mann's driveway. Id. 30:18-31:4, 35:3-12. Deputy Shevich got out of his squad car and approached the truck; Mann was standing next to Patterson in front of the truck. Id. 42:1-5; T. Mann Dep. 77:11-14. Deputy Shevich told Mann, "Oh, it's just you there, Troy. I thought it was someone else just driving around." N. Mann. Dep. 16:14-22. He then told Mann that he wanted to talk to him over by the squad car about his driving conduct and that Mann would be issued a citation because Nicholas was not wearing a seatbelt. Deputy Shevich Dep. 45:8, 46:19-21; T. Mann Dep. 80:3-6; Tupa

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

Aff. ¶ 2, Ex. J (Patterson Statement) at 3-4. Mann questioned why Deputy Shevich needed to talk to him over by the squad car and also told Deputy Shevich that he would go over to the squad car "in a minute" when he was done looking at the truck. Patterson Statement at 4, 9. According to Mann, Deputy Shevich asked Mann to go to the squad car only once; Deputy Shevich and Patterson state that Deputy Shevich asked Mann to go to the squad car three times; and Nicholas testified that Deputy Shevich told Mann to go to the squad car once before Deputy Shevich grabbed Mann and then again while holding him against the truck. T. Mann Dep. 84:2-12; Shevich Dep. 47:12-48:5; Patterson Statement at 9-10; N. Mann Dep. 22:9-20. Also in dispute is whether both Deputy Shevich and Mann were yelling: Mann testified that he did not yell or raise his voice; Deputy Shevich testified that he was "talking" and Mann "was getting defensive, loud"; Broking, who was nearby sitting inside a vehicle, testified that she heard both men yelling; Nicholas testified that Deputy Shevich did not yell but used a stern voice; and Patterson stated that Mann was not yelling. T. Mann Dep. 114:5-8; Shevich Dep. 46:12-47:16; Broking Dep. 12:2-18; N. Mann. Dep. 23:20-24:15; Patterson Statement at 5.

After Mann failed to move toward the squad car, Deputy Shevich grabbed Mann's right arm with his right hand, grabbed the back of Mann's neck with his left hand, and then lifted Mann's arm up and away from his body while pushing Mann's head down against the frame of the truck, underneath the hood, which had been propped open. Shevich Dep. 124-26; Mann Dep. 125:12-21; Broking Dep. 14:4-15:4. Deputy Shevich told Mann, "I'll give you to the count of three to get to my car or I'm going to take you to jail." Mann Dep. 125:24-126:1. Deputy Shevich let go of Mann and allowed him to go get his driver's license before issuing several traffic citations to Mann. Id. 142:2-3.

3

The record shows that Mann did not sustain any visible injuries as a result of Deputy Shevich pushing Mann's head down against the frame of the truck. When asked at his deposition, "What kind of injuries did you have to the top of your head?", Mann replied, "Nothing, lost a couple pieces of hair." Mann. Dep. 192:15-17. However, Mann alleges and has presented supporting evidence that he "suffered and continues to suffer severe pain in his neck, upper and lower back, and mental anguish." Compl. ¶ 13; Tupa Aff., Ex. R [Docket No. 35] (John Dowdle, M.D. Indep. Med. Exam.); Ex. S [Docket No. 36] (Kenneth L. Stapleton, M.A., L. P. Diagnostic Assessment).

## III. DISCUSSION

**A.      Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig, 54 F.3d at 470. The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.      Excessive Force Claim**

Count One of the Complaint asserts that Deputy Shevich acted under color of state law to

deprive Mann of his right to be free from excessive force under the Fourth and Fourteenth Amendments of the United States Constitution. Defendants argue that Mann's excessive force claim fails as a matter of law because the force used by Deputy Shevich was objectively reasonable, the injuries suffered by Mann were de minimis, and Deputy Shevich is entitled to qualified immunity. Defs.' Mem. in Supp. of Mot. for Summ. J. [Docket No. 22] at 11-17.

Government officials are entitled to qualified immunity "if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Sanders v. City of Minneapolis, 474 F.3d 523, 526 (8th Cir. 2007) (quotations omitted). The standard for assessing qualified immunity is one of "objective legal reasonableness." Winters v. Adams, 254 F.3d 758, 766 (8th Cir. 2001) (citing Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982)). The first question is whether, viewing the facts in the light most favorable to the party asserting the injury, the officer's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part, Pearson v. Callahan, ___ U.S. ___, 129 S. Ct. 808, 818 (2009). If the first question is answered in the affirmative, the second question is whether the right violated was clearly established.[2] Id. To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 639-40 (1987). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. "Whether a given set of facts

---

[2] In Pearson, the Supreme Court ruled that courts have the discretion to choose to evaluate the second question before deciding the first question. See 129 S. Ct. at 818.

entitles the official to summary judgment on qualified immunity grounds is a question of law." Greiner v. City of Champlin, 27 F.3d 1346, 1352 (8th Cir. 1994). "Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that the defendant should have taken the disputed action." Winters, 254 F.3d at 766.

Defendants argue that the force used by Deputy Shevich was reasonable as a matter of law and, therefore, he did not violate Mann's constitutional rights and is entitled to qualified immunity. In analyzing an excessive force claim, whether Deputy Shevich's actions were objectively reasonable in light of the facts and circumstances confronting him must be assessed without regard to his underlying intent or motivation. See Graham v. Connor, 490 U.S. 386, 397 (1989). To determine whether the force used was reasonable under the Fourth Amendment, the Court is required to carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396 (quotations omitted). The Supreme Court's "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. Courts are to consider all the facts and circumstances of the particular case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id.

Defendants argue that Deputy Shevich's use of force was objectively reasonable in view of the totality of the circumstances. When Deputy Shevich approached Mann, Defendants

6

contend, Mann was standing by the truck next to an individual whom Deputy Shevich did not know, Patterson, and Deputy Shevich had no way of knowing whether there were tools or objects within Mann's reach that could be used as weapons. Defs.' Mem. in Supp. of Mot. for Summ. J. at 12-13. Further, Deputy Shevich gave a reasonable command that Mann go to Deputy Shevich's squad car to talk about his driving conduct and the fact that Nicholas had not been wearing a seatbelt, but Mann refused to comply and instead started yelling at Deputy Shevich. Id. at 13. Defendants maintain that Mann "apparently labors under the misapprehension that he was entitled to engage in a more prolonged [oral] debate in a dark parking lot before complying with Deputy Shevich's repeated commands." Id.

Genuine issues of material fact preclude the Court from concluding, as a matter of law, that the force used by Deputy Shevich was reasonable under the totality of the circumstances. Deputy Shevich's testimony is that he repeated three times his order Mann to go to the squad car to talk about Mann's driving conduct and the fact that Nicholas was not wearing a seatbelt but that Mann immediately became defensive and argumentative and turned toward Deputy Shevich in a threatening manner. Shevich Dep. 46:6-48:4, 124:7-21. If true, Deputy Shevich's version would suggest that the force used on Mann was objectively reasonable. See Brown v. City of Golden Valley, 574 F.3d 491, 497 (8th Cir. 2009) ("A threat to an officer's safety can justify the use of force in cases involving relatively minor crimes and suspects who are not actively resisting arrest or attempting to flee . . . ."); Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir. 2004) (finding no excessive force when an officer tased a motorist who was "hostile, belligerent, and uncooperative," and who failed to comply with five commands by the officer), cited with approval in Cook v. City of Bella View, 582 F.3d 840, 851 (8th Cir. 2009). Mann's version,

7

however, is that Deputy Shevich requested that Mann go to the squad car only once,[3] that Mann asked him why he needed to go to the car,[4] and that he never raised his voice or made a threatening gesture toward Deputy Shevich. T. Mann Dep. 84:2-12, 114:5-8; see Martinez-Rodriguez v. United States, No. C08-265, 2009 WL 927752, at *4 n.5 (W.D. Wash. Apr. 3, 2009) (distinguishing the case of an individual who failed to comply with only one command

---

[3] Defendants contend Mann "admitted" in his deposition that Shevich may have given the order to go to the squad car three times and in support cite pages 81 through 83 of Mann's deposition. See Defs.' Rep. Mem. in Supp. of Mot. for Summ. J. [Docket No. 40] at 5. Immediately following that rather ambiguous testimony, Mann clarified, "I don't remember [Deputy Shevich] asking me to go to his car three times, no. . . . If he would have asked me to go to his car three times, I would have went to his car. . . . He asked me one time to go to his car." T. Mann. Dep. 84:2-12.

[4] Defendants suggest that even under Mann's version of the events of July 17, 2008, it is undisputed that Mann questioned Deputy Shevich once about why he was being commanded to go to the squad car and, thus, Deputy Shevich's use of force was reasonable given Mann's unlawful oral resistance. Defs.' Rep. Mem. in Supp. of Mot. for Summ. J. at 6. But questioning or challenging an officer's authority does not, by itself, amount to unlawful conduct. Cf. Wilson v. Kittoe, 229 F. Supp. 2d 520, 529 (W.D. Va. 2002) ("The right to criticize the actions of a police officer during an arrest is held by those individuals actually being arrested . . . .").

> "[C]onduct involving only verbal challenge of an officer's authority or criticism of his actions . . . operates, of course, to impair the working efficiency of government agents. . . . Yet the countervailing danger that would lie in the stifling of all individual power to resist—the danger of an omnipotent, unquestionable officialdom—demands some sacrifice of efficiency . . . to the forces of private opposition. . . . [T]he strongest case for allowing challenge is simply the imponderable risk of abuse—to what extent realized it would never be possible to ascertain—that lies in the state in which no challenge is allowed."

City of Houston v. Hill, 482 U.S. 451, 463 n.12 (1987) (alterations in original) (quoting Note, Obstructing A Public Officer, 108 U. Pa. L. Rev. 388, 390-92, 406-07 (1960)). It follows that criticism of or an oral challenge to an officer's authority or conduct does not, by itself, justify the use of force against an arrestee. See Simmons v. Tanner, No. CV506-091, 2007 WL 142764, at *2 (S.D. Ga. Jan. 17, 2007) (citing Hill, 482 U.S. at 461).

from cases where individuals failed to comply with multiple commands).

The inconsistencies between Deputy Shevich's testimony and Mann's testimony create genuine issues of fact. Additionally, elements of both parties' versions find corroboration in the statements and testimony of third parties. On the one hand, Patterson confirmed Deputy Shevich's account that he told Mann to go to the squad car several times and Broking confirmed that Mann was yelling; on the other hand, Patterson stated unequivocally that Mann did not yell or make a threatening gesture and that Deputy Shevich "just snapped." Patterson Statement at 8-10; Broking Dep. 12:13-18. Taking the evidence in the requisite light most favorable to Mann, there is nothing to suggest that Mann posed a threat to Deputy Shevich or that he was actively resisting arrest. Furthermore, the crimes now asserted as being at issue—seatbelt violation, misdemeanor obstruction, reckless driving, and no proof of insurance—were, relatively speaking, not serious. Accordingly, a reasonable jury could find that Deputy Shevich's use of force was not objectively reasonable under the totality of the circumstances.

Defendants contend that whether or not the use of force was objectively reasonable, Deputy Shevich is still entitled to qualified immunity because any injuries Mann sustained were de minimis and cannot support a claim of excessive force. In the Eighth Circuit, an excessive force claim under the Fourth Amendment requires the existence of an "actual injury." Hanig v. Lee, 415 F.3d 822, 824 (8th Cir. 2005). The Eighth Circuit recently clarified that "[i]t remains an open question in this circuit whether an excessive force claim requires some minimum level of injury." Cook v. City of Bella View, 582 F.3d 840, 850 (8th Cir. 2009) (quotation omitted). Evidence of bruising, lacerations, muscle or ligament strains, and post-traumatic stress disorder have been found by courts in this circuit to establish sufficient injury in an excessive force claim.

9

See Dawkins v. Graham, 50 F.3d 532, 535 (8th Cir. 1995) (bruises and facial lacerations); Lambert v. City of Dumas, 187 F.3d 931, 936 (8th Cir. 1999) (a small cut on the eyelid and scrapes on the knees and legs); Span v. City of Minneapolis, Civil No. 08-41, 2009 WL 803478, at *5 (D. Minn. Mar. 25, 2009) (sprain to the thumb and injuries to the neck, lower back, and left shoulder). But see Wertish v. Krueger, 433 F.3d 1062, 1067 (8th Cir. 2006) (finding that because handcuffing "inevitably involves some use of force," some force was "reasonably required to arrest and handcuff [the plaintiff]," and, thus, "his relatively minor scrapes and bruises and the less-than-permanent aggravation of a prior shoulder condition were de minimis injuries"). Here, Mann has proffered evidence that as a result of the incident on July 17, 2008, he suffered actual injuries consisting of an injury to his cervical spine, ligamentous or muscular strains, and post-traumatic stress disorder. See John Dowdle, M.D. Indep. Med. Exam. at 8; Kenneth L. Stapleton, M.A., L. P. Diagnostic Assessment at 7. These injuries are greater than the de minimis injuries suffered in Wertish as a result of being handcuffed.

Again, viewing the facts in the light most favorable to Mann, there is sufficient evidence to support Mann's claim that Deputy Shevich violated his constitutional rights by using excessive force. Having found a violation of a constitutional right, the question becomes whether the right at issue was clearly established. To determine whether a particular right was clearly established, it must be viewed in a particularized, relevant sense: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the

unlawfulness must be apparent." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (internal citation omitted). "Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." Id. at 741. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202.

Again, adopting a view of the evidence in most favorable light to Mann, a reasonable jury could find that Deputy Shevich used excessive force against an individual who, at the application of the force, had not committed a dangerous crime, had not posed a threat, and had merely questioned or challenged Deputy Shevich's command ordering him to go to the squad car. If the events on July 17, 2008, occurred as Mann claims they did, a reasonable officer would clearly know that the force used by Deputy Shevich was unlawful. Accordingly, summary judgment is not appropriate. See Orsak v. Meto. Airports Comm'n Airport Police, ___ F. Supp. 2d ___, 2009 WL 5030776, at *12 (D. Minn. Dec. 14, 2009) ("'Summary judgment is not appropriate where, as here, a dispute remains regarding the facts material to the qualified immunity issue.'") (quoting Rohrbough v. Hall, 586 F.3d 582, 587 (8th Cir. 2009)).

**C.     Monell Liability**

Mann's Complaint asserts a § 1983 claim (Count Six) against Itasca County for the alleged unconstitutional acts by Deputy Shevich on July 17, 2008. Under the Supreme Court's decision in Monell v. Department of Social Services, a governmental entity cannot be held liable under § 1983 merely because its employees committed unconstitutional acts. 436 U.S. 658, 690-92 (1978). Instead, Itasca County is liable under § 1983 only if its "custom or policy caused the

deprivation of the right protected by the Constitution or federal law." Angarita v. St. Louis County, 981 F.2d 1537, 1546 (8th Cir. 1992). In other words, the custom or policy must be shown to have been the "moving force [behind] the constitutional violation." Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999).

Mann's Monell claim is premised on an alleged custom within Itasca County of allowing deputies to engage in unconstitutional, discriminatory, and retaliatory conduct, including the use of excessive force. Pl.'s Mem. in Opp'n to Mot. for Summ. J. [Docket No. 27] at 24. "Monell liability also attaches 'for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision-making channels.'" Kuha v. City of Minnetonka, 365 F.3d 590, 603 (8th Cir. 2003) (quoting Monell, 437 U.S. at 690-91)). To demonstrate an unconstitutional "custom," a plaintiff must prove:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

Jane Doe "A" v. Special Sch. Dist., 901 F.2d 642, 646 (8th Cir. 1990).

Mann argues that he has adequately shown a widespread, persistent pattern of unconstitutional misconduct by deputies. In support, he offers that three other lawsuits have been initiated in the past few years involving allegations against Itasca County deputies for excessive force, harassment, and child molestation. In addition, he avers that "[Deputy] Shevich has engaged in a years-long campaign of retaliation against [Mann] for his complaints to

12

[Sheriff] Medure regarding his conduct; [Sheriff] Medure was aware of such conduct . . . and . . . failed to stop the campaign of retaliation."

That other lawsuits have been filed in the recent past involving allegations of misconduct by Itasca County deputies is not probative evidence of an unconstitutional custom. See Mettler, 165 F.3d at 1205 ("[Plaintiff] has produced no evidence regarding the factual background of these [other] complaints, nor has she shown that the incidents giving rise to these complaints bear any factual similarity to the [incident at issue in the current suit].") As the court in Ostroski v. Town of Southfold observed:

> [T]he mere fact that a number of [excessive force] lawsuits have been filed, without any information as to whether the suits are meritorious or spurious, or alternatively, any evidence that the municipality ignored such complaints such that it constituted deliberate indifference to any potential problem of excessive force, does not assist a fact-finder in determining whether the [municipality] actually has a historical problem of its police officers using unconstitutionally excessive force in the performance of their duties.

443 F. Supp. 2d 325, 346-47 (E.D.N.Y. 2006) (collecting numerous cases holding the same). Here, too, Mann has not provided any information as to whether the other lawsuits were meritorious, nor has he provided any information showing that Itasca County ignored complaints about the incidents that lead to the lawsuits. In addition, two of the three lawsuits do not allege excessive force.

The claim of a history of enmity between Mann and Deputy Shevich fails to support a claim of an unconstitutional custom. Specifically, Mann claims that in 2004, Deputy Shevich pushed him up against a truck outside of a bar in Deer River for no reason. In 2006, Mann claims, Deputy Shevich "jammed" him up against a car, threatened to take him to jail for not having dealer plates visible on his car, and told him, "Have more respect for me. When you

13

speak to me, you say yes or no, sir." Pl.'s Mem. in Opp'n to Mot. for Summ. J. at 24-25. However, Mann acknowledges he never complained to anyone about the 2004 incident and, thus, is unable to show that Sheriff Medure and Itasca County were deliberately indifferent to the alleged misconduct by Deputy Shevich. T. Mann Dep. 17:11-19:21. Mann states he called Sheriff Medure about the 2006 incident, but he expressly declined to file a formal complaint, claiming that he "[is] not one to make a big deal out of things." Id. 24:8-19; Tupa Aff., Ex. U [Docket No. 38] (Medure Dep.) 68:7-69:8. Sheriff Medure's discussion with Deputy Shevich about the incident after taking Mann's phone call, even though Mann declined to initiate a formal complaint, is contrary to establishing that Sheriff Medure was deliberately indifferent to allegations of misconduct. Medure Dep. 69:9-16.

Mann has failed to present evidence to support Monell liability by Itasca County for the alleged constitutional violations by Deputy Shevich on July 17, 2008. Accordingly, Defendants' motion for summary judgment on the § 1983 claim against Itasca County is granted.

**D.  State Law Claims**

In addition to his claims under § 1983, Mann asserts claims of assault and battery (Count Two), false arrest/imprisonment (Count Three), and intentional infliction of emotional distress (Count Five) against Deputy Shevich, and a claim of negligence (Count Four) against Sheriff Medure and Itasca County.

As a threshold matter, Defendants argue that the state law claims against Deputy Shevich fail because Deputy Shevich is entitled to official immunity. "[U]nder Minnesota law, a public official is entitled to official immunity from state law claims when that official is charged by law with duties that require the exercise of judgment or discretion." Johnson v. Morris, 453 N.W.2d

31, 41 (Minn. 1990). Law enforcement officers are "generally classified as discretionary officers who may be entitled to official immunity." Nelson v. County of Wright, 162 F.3d 986, 991 (8th Cir. 1998) (citing Johnson, 453 N.W.2d at 42). A law enforcement officer is not entitled to official immunity, however, if he "is guilty of a willful or malicious wrong." Rico v. State, 472 N.W.2d 100, 107 (Minn. 1991). Unlike the strictly objective analysis applicable to § 1983 qualified immunity, the official immunity analysis includes a subjective component. See Gleason v. Metro. Council Transit Operations, 563 N.W.2d 309, 317 (Minn. Ct. App. 1997). Official immunity applies if the an officer demonstrates that (1) his conduct was objectively legally reasonable, that is, legally justified under the circumstances; (2) his conduct was subjectively reasonable, that is, taken with subjective good faith; or (3) the right allegedly violated was not clearly established. Id. at 318.

As noted in the discussion of qualified immunity, genuine issues of fact persist regarding the objective reasonableness of Deputy Shevich's actions on July 17, 2008, and whether the right allegedly violated was clearly established. Arguably, this should end the inquiry. See id. (explaining that "under most circumstances, a legal determination on the existence of 'good faith' will be precluded by the existence of disputed facts," and, "[t]herefore, it is the rare case in which the 'subjective component' of legal reasonableness will be relevant or a viable theory for the defendant seeking to avoid suit"). Nevertheless, Defendants have not demonstrated that Deputy Shevich's conduct was taken with subjective good faith. On the record before the Court, whether Deputy Shevich is entitled to official immunity—and whether Itasca County is thereby entitled to vicarious official immunity[5]—cannot be resolved on summary judgment.

---

[5] "'In general, when a public official is found to be immune from suit on a particular issue, his government employer will enjoy vicarious official immunity from a suit arising from

### 1. Assault and Battery

Defendants argue that Mann's claim of assault and battery fails as a matter of law. To establish a claim of assault and battery against an on-duty peace officer requires a plaintiff to show that the officer used excessive force. See Paradise v. City of Minneapolis, 297 N.W.2d 152, 155 (Minn. 1980). As previously discussed, see supra III.B, genuine issues of fact remain on Deputy Shevich's use of excessive force. Accordingly, summary judgment is not appropriate on Mann's claim of assault and battery.

### 2. False Arrest/Imprisonment

"Under Minnesota law, the tort of false imprisonment, when asserted against [a law enforcement officer], is similar to that of false arrest." Cornelious v. Brubaker, No. 01CV1254, 2003 WL 21511125, at *11 (D. Minn. June 25, 2003) (citing Adewale v. Whalen, 21 F. Supp. 2d 1006, 1016 (D. Minn. 1998)). "The action for the tort of false imprisonment or false arrest protects the personal interest in freedom from restraint of movement. The restraint may be imposed by the assertion of legal authority, and if an arrest is made without proper legal authority, it is a false arrest . . . ." Lundeen v. Renteria, 224 N.W.2d 132, 135 (Minn. 1974).

Again, Mann has presented evidence raising issues of fact about the events immediately preceding Deputy Shevich grabbing Mann's arm and pushing him down against the truck. These fact issues bear on both the reasonableness of the force Deputy Shevich used to restrain Mann and the legality of the restraint itself. Summary judgment is therefore denied on Mann's state law claim of false arrest/imprisonment.

---

the employee's conduct.'" Michaud v. Demarest, Civil No. 06-4362, 2008 WL 4057744, at *9 (D. Minn. Aug. 26, 2008) (quoting Schroeder v. St. Louis County, 708 N.W.2d 497, 508 (Minn. 2006)).

### 3. Intentional Infliction of Emotional Distress

Defendants argue that Mann has failed to establish a prima facie claim of intentional infliction of emotional distress ("IIED"). Under Minnesota law, an IIED claim requires proof of four elements: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." Langeslag v. KYMN Inc., 664 N.W.2d 860, 864 (Minn. 2003). The burden on a plaintiff in proving an IIED claim is high: only "egregious facts" rise to the level of constituting extreme conduct and severe mental distress. Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 439 (Minn. 1983). For an act to be extreme and outrageous, "the conduct must be . . . so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." Hill v. Scott, 349 F.3d 1068, 1075 (8th Cir. 2003) (citation omitted). Moreover, a plaintiff must show that the defendant "intend[ed] to cause severe emotional distress or proceed[ed] with the knowledge that it is substantially certain, or at least highly probable, that severe emotional distress will occur." K.A.C. v. Benson, 527 N.W.2d 553, 560 (Minn. 1995). Summary judgment is proper on an IIED claim "if a party does not meet the high standard of proof needed for the claim." Hill, 349 F.2d at 1075.

The conduct at issue here does not rise to the high level necessary to maintain an IIED claim. Even under Mann's version of what happened on July 17, 2008, Deputy Shevich's conduct was not "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." In addition, Mann has not presented any evidence to support an inference that Deputy Shevich intended to cause severe emotional distress or that he acted with knowledge that such distress was almost certain to occur. Defendants are entitled to summary

17

judgment on Mann's IIED claim.

### 4. Negligence

Finally, Count Four of the Complaint asserts that Itasca County and Sheriff Medure were negligent in their hiring, supervision, training, and retention of Deputy Shevich. As Defendants correctly note, "current Minnesota law does not recognize a claim for negligent training," Johnson v. Peterson, 734 N.W.2d 275, 277 (Minn. Ct. App. 2007); and hiring, training, supervision, and retention are policy-level activities protected by statutory immunity, Hassan v. City of Minneapolis, Civil No. 04-3974, 2006 WL 2583182, at *10 (D. Minn. Sept. 1, 2006) (citations omitted); Hickman v. City of Minneapolis, Civil No. 02-4157, 2004 WL 1459443, at *4-5 (D. Minn. Feb. 10, 2004) (citations omitted). Mann has not advanced any argument to the contrary. Therefore, the Court concludes that Mann's negligent hiring, supervision, training, and retention claim is barred by statutory immunity.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants Darrin Shevich, Pat Medure, and the County of Itasca's Motion for Summary Judgment [Docket No. 19] is **GRANTED IN PART** and **DENIED IN PART**; and

2. Counts Four, Five, and Six of the Complaint [Docket No. 1] are **DISMISSED**.

BY THE COURT:


    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: February 23, 2010.